# EXHIBIT 2

# Ethan Zuckerman

☰

May 2, 2024

On Wednesday morning, the amazing and brilliant lawyers at the Knight First Amendment Institute at Columbia University (K1A) – primarily Ramya Krishnan and Alex Abdo – filed a lawsuit on my behalf: Zuckerman vs. Meta Platforms. This is a federal lawsuit, filed in the northern district of California, and it seeks "declaratory judgement" – basically, a ruling from the court that a research study I propose to conduct won't break laws like the Computer Fraud and Abuse Act.



The research is pretty simple: In 2021, UK-based programmer Louis Barclay built a browser extension called "Unfollow Everything" (UE). If you chose to use it, UE would step through the friends you have on Facebook and the Pages you follow, and, well, unfollow all of them. This would render your Facebook feed either empty, or uselessly filled with spammy recommendations. One way or another, Barclay reasoned, you'd probably use Facebook less, and use it the way you might have before 2005 – going to a friend's page and seeing their updates.

Meta wasn't a fan of Louis's work. They banned him for life from their platforms and demanded he cease and desist

distributing his tool. I asked the court whether I could build a new, up-to-date version of UE (Unfollow Everything 2.0), with more privacy preserving features, and do an opt-in study where participants could see whether using UE2 reduced their use of Facebook, increased their sense of control over Facebook, and increased or reduced the diversity of the people they interacted with.

Because Meta prevented Louis from distributing UE, we think it's reasonable to ask a court to rule on whether we can release a very similar tool. We believe we can, based on our reading on [section 230 of the Communications Decency Act](#), specifically section (c)(2)(B), which states that it is the policy of the United States "to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services". If a court agrees, we think this may open up a channel for developing a category of software that Francis Fukuyama and friends call ["middleware"](#), software users can install to have greater control over their social media experience.

([Alex Abdo just posted a Twitter thread](#) that offers a more detailed overview of the case and our legal strategies.)

I'll be sharing more writing about my motivations behind this suit in the next couple of days. In the meantime, I'm really enjoying watching smart people talk about whether they think this suit could work.

Writing for Wired, Vittoria Elliott talks to a wide variety of legal experts, who have a range of views on whether this could work. [Barbara Ortutay, writing for AP](#), focuses on the idea that we might want more control over our social media than we currently have.

The stuff that's been the most fun for me is watching friends and colleagues who follow internet law closely reflect on our arguments and their implications. [Daphne Keller](#) notes that [we manage to raise issues all over the world of internet law](#), from section 230 to DMCA 1201. [Cory Doctorow](#) [connects our work to the idea of adversarial interoperability](#), the idea that technology progresses when we can interoperate with existing systems whether their owners like it or not. And [Mike Masnick](#) has [a funny and insightful post](#) about how the novelty of our legal argument is throwing some legal experts for a loop.

I will be writing more about this topic, but some quick notes/disclaimers for now:

– While I get to have my name on the suit, the work here has been done by Ramya Krishnan, Alex Abdo and their colleagues at K1A, and by Louis Barclay, who conceived of and built UE in the first place.

– I am able to be plaintiff in this suit because I'm lucky enough to be a tenured professor at a university that values social change as well as research. I am acting entirely on my own, and in no way acting on behalf of UMass Amherst, but as I've let my colleagues, chairs and deans know about what I'm doing, they have been uniformly supportive and lovely.

Unfortunately, this is a moment where the US is having a lot of trouble passing critical legislation to clarify questions like whether users have a right to control their experience of social media. (Instead, we seem to be banning Tiktok.) At moments like this, the courts can be as important as legislatures for shaping policy. If you, like me, are in the privileged position of being able to be part of a case like this, I'd urge you to do so.

– Mike Masnick describes this suit as "Zuck vs. Zuck". Fair enough. But I pronounce my name "ZOOK er man" and he pronounces his "ZUCK er berg". So as long as you think of it as "ZOOK vs. ZUCK", it's fine by me.

## Leave a Reply

Your email address will not be published. Required fields are marked *

Comment *

Name *

Email *

Website

Save my name, email, and website in this browser for the next time I comment.

## Recent Posts

A brief update on Zuckerman vs. Meta

Zuckerman vs. Meta Platforms

Twitter's New Business Model: Russian Disinfo

Pablo Boczkowski on the crisis in the "mental health capital of the world"

How Big is YouTube?

## Greatest Hits

Cute Cats to the Rescue? Participatory Media and Political Expression

What comes after election monitoring? Citizen monitoring of infrastructure.

Beyond "The Crisis in Civics" – Notes from my 2013 DML talk

How do we make civic crowdfunding awesome?

When the world is your dance teacher

An idea worth at least 40 nanoKardashians of your attention

The tweetbomb and the ethics of attention

The Passion of Mike Daisey: Journalism, Storytelling and the Ethics of Attention

See All Greatest Hits

## Archive: By Date

Select Month

## Archive: By Category

Select Category

**Follow Me:**

**Contact Me:**

Ethan Zuckerman 2024