UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN ZUCKERMAN,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 24-cv-02596-JSC<br><br>**ORDER RE: DEFENDANT META PLATFORMS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

This lawsuit involves a proposed web browser extension called Unfollow Everything 2.0, which would automate the process of unfollowing friends, groups, and pages on a user's Facebook social media profile. Ethan Zuckerman, a professor at UMass Amherst, seeks a declaratory judgment against Meta Platforms, Inc. that 47 U.S.C. § 230(c)(2)(B) provides him immunity for all breach of contract, Computer Fraud and Abuse Act ("CFAA"), and Computer Data Access and Fraud Act ("CDAFA") claims related to Unfollow Everything 2.0. In the alternative, Professor Zuckerman requests a declaratory judgment that Unfollow Everything 2.0: 1) does not violate Meta's Terms of Service, or as applied, the Terms of Service are void for public policy; 2) Unfollow Everything 2.0 does not violate the CFAA; and 3) Unfollow Everything 2.0 does not violate the CDAFA. Defendant moves to dismiss all claims.

After considering the parties' submissions, and with the benefit of oral argument on November 7, 2024, the Court GRANTS the motion to dismiss for lack of subject-matter jurisdiction. Professor Zuckerman's request for declaratory relief is not ripe for adjudication and seeks an unconstitutional advisory opinion.

//

//

**DISCUSSION**

Professor Zuckerman's request for relief is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides: "[i]n a case of actual controversy," a court "may declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Analysis under the Act proceeds in two parts: first, a court must determine whether an "actual controversy exists," and second, whether to exercise its discretion to permit the declaratory judgment action. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143-44 (9th Cir. 1994).

A complaint must be dismissed when the district court lacks subject-matter jurisdiction to hear the dispute. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). Article III of the Constitution limits federal courts "to deciding cases and controversies" where the plaintiff has standing to bring suit and the dispute is ripe for judicial review. *Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009) (cleaned up). The ripeness inquiry, in particular, "addresses *when* litigation may occur" and often "coincides squarely with standing's injury in fact prong." *Id.* (citations omitted). The interplay between standing and ripeness instructs that "a possible future injury is not sufficient to establish standing . . . [b]ut future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *3taps, Inc. v. LinkedIn Corp.*, No. 18-cv-00855, 2022 WL 16953623, at *3 (N.D. Cal. Nov. 15, 2022) (citation omitted) (cleaned up).

Ultimately, it is "[t]he party asserting federal subject-matter jurisdiction [who] bears the burden of proving its existence." *Chandler*, 598 F.3d at 1122. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may assert a factual or facial challenge to jurisdiction. *3taps, Inc.*, 2022 WL 16953623 at *4 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A factual challenge "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," while a facial challenge argues "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. To resolve a factual challenge, the court "may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Id*. at 1038. The

court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor . . . ." *3taps, Inc.*, 2022 WL 16953623 at *4 (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

Meta maintains the instant case presents no actual controversy for two main reasons. As alleged, Professor Zuckerman has not built the Unfollow Everything 2.0 browser extension—he has prepared "pseudocode" describing the product's functionality and architecture, but his team of software engineers have not developed the actual code that would allow the extension to operate. (Amended Complaint "AC" ¶ 85.) Additionally, Meta has not contacted Professor Zuckerman regarding Unfollow Everything 2.0 to assert a position on whether it would violate Facebook's Terms of Service. Meta argues these facts make this case unripe for adjudication. Even if the case were ripe, Meta further asserts the Court should not exercise its discretion based on the factors outlined in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

The Court considers the instant motion a facial attack on subject-matter jurisdiction and addresses these arguments assuming the truth of the Amended Complaint allegations.

**I.    RIPENESS**

The "actual controversy" required by the Declaratory Judgment Act "is the same as the 'case or controversy' requirement of Article III," and "requires no more stringent showing of justiciability than the Constitution does." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981) (citation omitted). "The disagreement must not be nebulous or contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952). Absent such a controversy, the court cannot adjudicate the matter as it would "become an unconstitutional advisory opinion." *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

The constitutional ripeness inquiry looks to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

3

interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992). "If the defendant's actions cause the plaintiff to have a 'real and reasonable apprehension that he will be subject to liability,' the plaintiff has presented a justiciable case or controversy." *Id*. (citation omitted). So, the plaintiff's alleged injury must not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (citation omitted). Here, Plaintiff's alleged injury is too contingent upon uncertain events to satisfy the constitutional ripeness requirement.

Professor Zuckerman has not yet created Unfollow Everything 2.0. The "pseudocode" prepared by him and reviewed by an "academic cybersecurity expert" provides a sense of the tool's architecture and its proposed function. (AC ¶ 85.) Indeed, the Amended Complaint states often what the browser extension "will" do or how it "would" function. (*Id*. ¶¶ 71-77.) But as alleged, Professor Zuckerman has not yet built the tool. (*Id*. ¶ 85 ("an academic cybersecurity expert has reviewed the design and confirmed that the tool, *if built to the specifications in the design*, will perform as expected" (emphasis added).) Additionally, he alleges:

> Before actually launching Unfollow Everything 2.0, Professor Zuckerman must build the tool as designed and obtain approval for the research study from his university's institutional review board. Professor Zuckerman has assembled a team of engineers to code the tool. He has also applied for institutional review board review, and fully expects to receive approval. He anticipates being able to complete the tool within six weeks of a determination from this Court that it would be lawful for him to launch the tool.

(*Id.*) So, although he "anticipates" the coding could be completed within six weeks by his "team of engineers," his anticipation demonstrates the uncertainty in how the tool will ultimately be coded, by what technical means it will interact with Facebook, and how long the venture will take. (*Id*.) "[U]nless and until contingent events occur," his request for declaratory relief remains too speculative to support jurisdiction. *Bova*, 564 F.3d at 1097.

Professor Zuckerman cites various cases across federal courts to suggest his preparations to date are sufficiently concrete. But those cases do not support his contention that a tool which remains only conceptual suffices to meet the "actual controversy" requirement. Indeed, in nearly

4

all of those cases[1] meaningful steps in manufacturing had been completed by the time declaratory relief was sought. *See, e.g., Interdynamics, Inc. v. Firma Wolf*, 698 F.2d 157, 160 (3d Cir. 1982) (noting an "experimental sample" had been created); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 877 (Fed. Cir. 2008) (The product at issue was "customized based upon the dimensions of each customer's reactor," so manufacture had to wait until dimensions were received from customers.); *Paramount Pictures Corp. Axanar Prods., Inc*., No. 15-cv-09938, 2016 WL 2967959, at *6 (C.D. Cal. May 9, 2016) (Though film had not been completed, the script was "fully revised and locked," and the infringement was "based on Defendants' utilization of similar character, theme, setting, and mood."); *Gelmart Indus., Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327, 332 (S.D.N.Y. 2014) (noting the existence of "marketing prototypes" and that plaintiff had "designed and offered product for sale bearing [the allegedly offending mark]"). The absence of a meaningful prototype or functional code distinguishes Unfollow Everything 2.0 from the above-cited cases.

Professor Zuckerman's insistence that the absence of actual code does not impact the ripeness analysis because the dispute turns on the core functionality—not technical details—of Unfollow Everything 2.0, is unpersuasive. To satisfy ripeness, a court must be able to issue "a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007). If all that mattered were the core function or outcome the tool enabled, then this dispute could be about *any* extension that automated an interaction with Facebook, real or hypothetical.

---

[1] In *Rengo Co. v. Molins Mach. Co.*, 657 F.2d 535, 539 (3d Cir. 1981), the plaintiff asserted a patent infringement claim against a defendant who had advertised, but not manufactured, a potentially infringing device. The defendant argued the court lacked jurisdiction because there was no infringing device, but also asserted a counterclaim against the plaintiff for violation of antitrust laws and sought declaratory judgment on patent invalidity. *Id*. at 538-39. Ultimately, the court of appeals upheld jurisdiction to determine patent validity and infringement, noting that "[r]egardless of deficiencies in the complaint," the defendant's assertion of a counterclaim conferred jurisdiction. *Id*. at 539. Though the court of appeals went on to hold the defendant's "apparent ability" to produce a possibly infringing device was sufficient, it maintained its separate ground for jurisdiction based on the defendant's counterclaims. *Id*. These facts differ from the instant case, where Meta has not asserted a claim against Professor Zuckerman while simultaneously contesting the Court's jurisdiction. Given the *Rengo* court's alternate grounds for jurisdiction, the Court does not consider its "apparent ability" analysis to be dispositive.

But the dispute must be about *this* tool, not *a* tool. Professor Zuckerman, or his investors, want an opinion on legality *before* they invest further resources into Unfollow Everything 2.0. Federal courts do not, and cannot, exist to give advisory opinions to assist investment decisions.

Professor Zuckerman's allegations also do not permit a plausible inference of a "real and reasonable apprehension that he will be subject to liability." *Spokane*, 972 F.2d at 1092. In assessing apprehension of liability, the Ninth Circuit has declined to "identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation," instead considering a spectrum of factual circumstances. *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982). Here, Professor Zuckerman has not alleged any contact with Meta prior to this suit regarding Unfollow Everything 2.0. This lack of contact signals that adverse positions on the dispute have not sufficiently crystallized into a ripe case. *See, e.g., Adobe Sys. Inc. v. Kelora Sys. LLC*, No. 11-cv-3938 CW, 2011 WL 6101545, at *4 (N.D. Cal. Dec. 7, 2011) (holding there was no apprehension of suit where the defendant had not "communicated with [the plaintiff] at all before [plaintiff] instituted [the] suit").

Instead, Professor Zuckerman argues Meta's history of litigation against third parties who have created browser extensions suggests a reasonable apprehension of suit. He also alleges a cease-and-desist letter from Meta threatened litigation against an individual who created a browser extension that functioned identically to Unfollow Everything 2.0. (AC ¶¶ 86-89.) Ultimately, Meta's litigation history against other entities—who have no alleged connection to Professor Zuckerman—does not establish a plausible apprehension of suit related to this proposed technology. *See Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1547 (N.D. Cal. 1990) ("[S]uit against [third parties] alone cannot reasonably be viewed as giving rise to an 'apprehension of liability' on [plaintiff's] part."). Professor Zuckerman cites to *3taps, Inc. v. LinkedIn Corp.*, No. 18-cv-00855, 2022 WL 16953623, at *4 (N.D. Cal. Nov. 15, 2022), to support his assertion that litigation brought against similarly situated entities can give rise to an actual controversy. However, *3taps* is distinguishable. There, the plaintiff had communicated with the defendant about the basis of the dispute prior to seeking declaratory relief. *Id.* Additionally, the defendant in *3taps* had sued a third party related to the matter, but that third party

6

shared a common partial owner with the plaintiff, and the court had granted a motion to relate the plaintiff's case to the third party's suit because of common facts. *Id*. at *2. These circumstances differ from the instant case where Professor Zuckerman has not alleged any such connection to the third parties sued by Meta.

Professor Zuckerman's other cited authority fares no better. In both *E. & J. Gallo Winery v. Proximo Spirits, Inc*., 583 F. App'x 632 (9th Cir. 2014), and *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co*., 655 F.2d 938 (9th Cir. 1981), the plaintiff had a relationship to the third parties threatened with suit by the defendant—for *Gallo*, the third party was their sole supplier, and in *Societe*, it was a purchaser of their product. Moreover, Professor Zuckerman overlooks an important distinction between the patent cases upon which he relies and the instant case. An action for patent infringement may derive from unauthorized use or sale of a patented invention, but also the making of the invention. 35 U.S.C. § 271. The manufacture of a product may expose a declaratory relief plaintiff to patent infringement liability, thereby creating an apprehension of suit without sale or distribution. Here, he has not alleged a theory of liability that prevents him from even coding Unfollow Everything 2.0. As such, Professor Zuckerman—who has not created the tool at issue—falls short of the reasonable apprehension of suit articulated in the cited authority.

Accordingly, Professor Zuckerman has not pled an "actual controversy" to provide this Court with subject-matter jurisdiction.

## II. THE COURT'S DISCRETIONARY EXERCISE OF JURISDICTION

To the extent ripeness is a close question here, the Court touches lightly on the discretionary factors that counsel in favor of dismissal.

The Declaratory Judgment Act provides courts with discretion to assert jurisdiction when an actual controversy exists. To guide courts in this exercise, the Supreme Court laid out factors that bear on the utility and propriety of adjudicating a request for declaratory relief in *Brillhart v. Excess Ins. Co. of Am*., 316 U.S. 491, 495 (1942). These *Brillhart* factors caution that "[t]he district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative

7

litigation." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  This list is not exhaustive, and the Ninth Circuit has also considered:

> "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies."

*Id*. at n.5.

Of these factors, the Court considers "settlement of all aspects of the controversy" and "clarifying the legal relations at issue" to be the most relevant here.  These factors echo the underlying concerns of the ripeness doctrine, where a premature suit may not fully develop the topography of a dispute to achieve a conclusive resolution.  Since Unfollow Everything 2.0 is not built, and the parties have not solidified their positions on its use with Facebook, much remains uncertain.  Ruling on the hypothetical causes of action Meta might bring had Unfollow Everything 2.0 been released could fail to resolve the dispute, leaving the parties embroiled in further litigation on claims unconsidered here.  Indeed, were Professor Zuckerman to prevail, the Court would have to cabin a declaratory relief order based on contingent facts—such as, whether Unfollow Everything 2.0 would be built to $x$ specification or function in $y$ capacity, or whether $z$ provision of the Meta Terms of Service would be implicated.  Such guesswork runs counter to the benefit of finality offered by the judiciary.  Therefore, even if the Court had subject-matter jurisdiction, it would nonetheless exercise its discretion to decline to hear the dispute until it becomes concrete.

## CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is GRANTED without prejudice.

**IT IS SO ORDERED.**

//

//

Dated: November 22, 2024

*Jacqueline Scott Corley*
_____
JACQUELINE SCOTT CORLEY
United States District Judge

9